Edwards, Ch. J.
delivered the opinion of the court. After a statement of the case, he proceeded—
The several positions taken in argument, on either side, may be confined to three propositions :
1st. Will a bill in equity lie on behalf of a settler, under the acts of the legislature of Kentucky, against a person claiming under the legislative acts of Virginia, without proof of actual fraud or accident i
See Crvw's heirs -vs. Bar-435! te'r> MU
2tid. Wiék tfeé complainants settlers oh vacant láiiái w4hin the meaning of the acts of assembly of 1⅜¾7, aha ífÉÉf If só, then, ^ . .
3rd'. Cari the intermediate grant, between the &rst pc-Cttjpáhcy and the certificates óBfámed from ⅛⅛ court oi eomíriissidfíérá, deféát the claims of the settlers?
Üpóh the JUrst question, táketi ás a general ábstrác| proposition, we liave no hésitátióh in saying, that, in alf Conflicting claims to land, if one hath right,, ancj thé fórmri óf tdixj aré inádéqíiate tó protect that fight, a court of equity rimst.
The jurisdiction óf courts of Cháncery, from amero atom, has been gradually unfolded and eStehded • struggling with the courts of common láw, in its growth ; but succeeding iri the contest, by a Happy facility iii á-dápting its forms to the subjects embraced ; by an easy, pliability in its proceedings; affording a rriore enlarged éS&riination, a mofe Uniform rule of property, and a hlore appropriate redress. Chancellors, it is true, have ftohr Classed théir appropriate subjects of jurisdifctibp, un-d'éf the héads of frarid, accident, and trusts. Brit it must not therefore be admitted, that a jurisdiction, the most effectual' and appropriate for the uniform decision üpóri' dur latid litlés, must be abandoned, if it should riot ⅜11 within the one or the other of those classifications.
This court cririnot say, that the eiefcise of jurisdiction By the Courts of chancery, for upwards'of twenty years j an aéqu'iescence without struggle ; and thé silent approbation of the legislature 3 shall not give as good á sanction, as a single decisión of a British chancellors And it cárinot be imagined, that an incipient right* under* the laws of Virginia, cari give license to, do a wrong in Keritucky, because Of our separation ; or that the One, jiarty interested, should' be sole judge, iri determining when'his /⅜⅛⅜ tó take, and what he had" taken, were equipoised in the scales of justice.
The second question máy be considered as tó the timé of settlement, and as to the vacancy of the land at that time. Upon the first, the proof is clearmrid ekplicit, ast, to the improvement of the lands in the fall of 1798* and that one of'the complainants JAridfew Jasper) settled himself thereon, in the sáirié fall ; and'that / the" others settled upon theirs, in the eftsuittg spring. At the time ' *465 the improvements weré made, no law recognized thém, Us any foundation óf a claim to the land. The act of 1795 (a), wás only retrospective. Buttheimprovement, •and continued residence in 1797, was a sufficient settlement* under the statute enacted on the first day of Márch in that year (b).
But if any doubt could have ¿risen, it is silenced by the latter part of the sixth section of the act of Í798 (c), which ascertains and establishes the mode and criterion bf determining the claims, and their priority; This section will be hereafter more particularly noticed.
■ The Other member of the second question is demonstrated in favor of the settlers, by the plat and evidence. It appears that the entry of Lipscombe, cannot, by any rational construction, or even plausible mistake, be made to include any part of the land in controversy; and, that even his survey was not executed* until after the appellants were actually settled, and during their residence oil the respective claims;
The land was clearly vacánt, and unappropriated by Lipscombe, at the time óf the improvements and settlements in question, without deciding whether a Settlement within the boundaries of an erroneous survey of a military location, previous to the emanation of the grant* would, or would not* be an act of settlement* authorised by law;
The third question depends upon the time front which the rights of the settlers* and the claims of Lipscombe; shall be said to have accrued; By the statute enacted and approved on the first day of March 1797, the 1R cense and terms of settlement oii vacant lands were declared; By this, one year’s residence, previous to the grant of the certificate by the commissioners, was required of each settler. As the commissioners were to hold their sessions in the several counties* commencing in August 1798, arid ending in October, this act would have had a very limited operation; On the 10th of February 1798, another act was passed* entitled, “An act to amend and revise the act entitled an act for couraging arid granting relief to settlers,” whereby it is recited, that the act aforesaid* * is found defective, and wants amending ; and it appears most proper to draw the said recited act, with the necessary amendments, into one point of view.”
*466 Therefore, it was énaeted, “ That any widow,or arty 'free finale persons, above the age of eighteen years, and every other free person, having a family, who shall have hr may actually settle himself or hérself on any vacant and unappropriated land, on the south side of Green river, on or before the first day of July next, clear and fence two acres of land and tend the same in corn, shall he entitled to two, and'not less than one hundred acres, to include his or her settlement in any part of the survey, which he or she shall express in his or her entry.” The third section requires that the party “ who shall be entitled to a settlement by virtue of this act, shall lay in his or her claim before the commissioners; describing the bounds of his or her lands ; and have there his or her witnesses to prove their rights of settlement.”
The sixth section requires the appointment of the commissioners, and specifies the respective times and places at which their sessions shall be holden, in the several counties south of Green river, commencing in August and ending in November, with power to appoint re-fittings, where any business had been left unfinished. Their powers are declared, “ To hear and determine-the rights-of settlement agreeably to this act”
It is evident, therefore, that the commissioners had no power to grant new rights, but to determine and ascertain those which that act had granted. The priority of rights to be heard by the commissioners, under the act of 1797, was declared by the sixth section thereof, viz. “ In all disputes between settlers, respecting the priority of settlement, the improvement first made shall have the preference.”
The sixth section of the act of 1798, gives the commissioners power “ to hear and determine all disputes, during their sitting, between those who shall claim a right to settlement under this act.” And in all disputes “between settlers, respecting the priority of settlement, the eldest improvement made since the first day of March 1797, shall have the preference ; but no person shall obtain a certificate for more than one improvement; provided, however, any person who may have actually settled him or herself on any vacant land, as aforesaid, prior to the first day of March 1797, and comply with the requisitions of this act, and reside thereon' at die meeting of the commissioners, andwhodkliiot obtain a *467 certificate from the former commissioners, shall be considered as the eldest improver; but in a dispute between settlers, concerning, the priority of improvement, under this act, no improvement shall be considered as sufficient, unless the person making tfie s#une shall have actually settled thereon within four months from the time of improving, unless,a sufficient reason can be alleged, to be adjudged of by the commissioners.”
The seventh section makes it the duty of their-clerk to make out a certificate to each person to whom a claim> is granted, describing, particularly, the bounds of: the land, agreeably to the location, handed in to the court, which certificate shall be signed by the commissioners; and the said clerk, shall enter tfie locations in a book ; and such,book pr books, after, being signed by the commissions, shall be lodged in the register’s office, and shall be admitted as testimony, or a copy therefrom, attested by the register,, in any future disputes between settlers.”
The arguments, founded upon the supposition, that the commissioners were required to certify the times of improvement, or that they Ought to have done so, and that these certificates being silent as to the time of improvement, cannot be helped by parol averment of the party, must fail. These provisions show, beyond question, that as between settlers, the right commenced from the time of improving ; and improvements made previous to March 1797', where the act of 1798, had been complied with in other respects, were declared eldest. In doing this, the legislature have declared the commencement of the claim, to every legal and equitable intent.
It must not be forgotten, that the claims for settlement were the only rights which had originated under the state of Kentucky. The time limited by the articles and terms of separation from Virginia, for the location and appropriation of claims derived under the laws of Virginia, and particularly as to the claims within the district set apart for the officers and soldiers, had expired on the first day of May 1792, as the farthest time allowed for the appropriation of any claims under that state. Those claims were to be perfected under the laws,of Kentucky ; but the precise quantum of right, must have been fixed before the passage of the acts of the legislature for encouraging and granting relief to settlers. The standard of right and dignity, as to all.other claims, hav- *468 ;ng been fixed, it was only necessary that the standard between the claims subsequently created, should be fixed. That the commencement, and not the fulfilment of the: services required, must be regarded as the criterion-of . priority, as evidenced by the sections of the acts before, recited. '•
That the whole service is not to be taken as one act,, and disregarded in the question of priority of title, un-. til completed, is. manifest. The act distinguishes by priority of improvements ; then speaks of improvements' not commencing by settlement ■, and declares a time within which a settlement must be made on such improvements : and in such case, expressly declares, that the improvement shall be the commencement of right j- and not the end, or more matured state of compliance with the law.
The commissioners were not required to state, in the certificate, any thing relating to the right, but the quantity and boundaries described by the claimant, and the rate of the land-, by way of ascertaining the price to be paid. The certificate amounted only to an adjudication that the previous requisites of the law had been com-, plied with, and the rate to be paid for the land. The balance of the certificate was the act of the party, in describing the land claimed. He was not bound or required to state when it commenced». His certificate was an admission of his claim to the land settled and improved ; which it is competent for him to identify, as to place and time, when occasion shall require. If it were otherwise, let us. examine the consequences.
A grant may issue at the end of six months from the registration of the survey ; that may be done as soon as the surveyor, will be pleased to record the plat and certificate thereof, and deliver it out to the owner. So that in little more than six months, a grant may be obtained upon any survey.
The act of 1797, required of the settler, a year’s previous residence. The act of 1798⅝ dispensed with residence for any given length of time, previous to the issuing of the certificate : but, by both acts, the sittings of the commissioners were defered until the month of August 1798¿ A person who settled in March 1797, or had improved before that month, or who had or shou ld, settle and complete his improvements by the first of Ju-. *469 ly, in the year 1798, was within the provisions of both-acts. But a person, who, by an illegal or erroneous survey, obtained, by any colour whatever, six months an-, teriof to the first day of July 1798, and including settlers, could, notwithstanding, have procured a grant very conveniently, hefore the settler could, by possibility, have obtained his certificate. If he had no right, until he obtained his certificate, he is without redress. Shall it be said that such a grant, right or wrong, shall defeat the bona fide settler ? This, in effect, would be a declaration that the settler had no protection from illegal surveys, until within six months next preceding the time at which he might reasonably hope to obtain his certificate from the commissioners.
The operation of the act of 1797, would thus be wholly defeated ; for twelve months previous residence, would then be impossible ; and that of 1798, would have been partially suspended, in several of the counties in which the latter sessions of the commissioners were ap, pointed. By such a construction, the settlers, instead of having the pledged faith of a just government, would have had only an instrument, like unto the invitation of a sharper. Such conclusions to be formed out of the acts of the legislature, would be absurd : and therefore, such constructions canno.t be proper. Any person who really and bona fide had settled himself on vacant land, under faith of those statutes, was entitled, in the general, to protection from wrongful intrusion from surveys,
Let us inquire whether the nature or circumstances of Lipscombe’s grant, or survey, can form an exception. Is there any magic in the name of a military survey, or a military warrant, which can authorise or license the owner, or the surveyor, to range at large from the entry, free and unconfined ? It is true, those to whom such warrants, were granted, purchased them at a price, which the present and future generation, ought to hold in the most grateful remembrance. But some two or three individuals., who have contributed their mite to the common weal, ought not to be made to sustain the whole weight of gratitude and bounty, due from the com-. jnunity at large. This would be injustice and oppression.
If a grant had actually issued before the first act of Impro ving, with an intention of appropriation, manifest- *470 and continued according to law, then, no such improving or settling, could give claim, because not upon-wo-. cant land. But it vacant at the time of such improvement, when the services are rendered; and completed, according to the statutes, the whole performance shall be taken together; and the claim must relate to the firs® incipient act, unless an intermediate abandonment, or an intention in fraudem legis^ is shewn.
3 Cranch i.
Under the laws of Pennsylvania for settling vacant Jands, at a certain price to those who would cultivate, improve and settle them, it has been uniformly decided-in the courts of that state, that the first incipient act of improving, if accompanied and pursued animo residendi^ so as to complete the services within the term required by law, shall be considered as the incipiency of the claim.
Under the act of 1779, chancellor Wythe decided that the settler had an incipient claim from the time of improving, even against one who had acquired a right previous to that act (a). That decision was correctly reversed by the court of appeals of Virginia; yet both decisions acknowledge the principle, that if the improvements recognized by that act, had been made under the faith of an existing law, that they would have been the incipiency of the claims. We are clear, that such is the intention and general scope of our statutes.
There is no exception in favor of the holders of military warrants, who might choose to swing from their entries ad libitem ; but, on the contrary, the acts, themselves contain a plain negative upon such an implication.
The ninth section of the act of 1797, and the tenth section of the act of 1798, require the surveyors of counties including any part of the military boundary, as it was called, to apply immediately to the surveyors of the Virginia state and continental lines, for copies of all the entries in their respective offices, on. military warrants ; which are required to be furnished in three months from the passage of the act ; and every one who pleased, was. entitled to have, from the surveyors., of the respective counties, a copy of any entry, paying one.shilling for every copy so delivered. J
For what could these entries have,been provided in , every county including any part of the land set apart for officers and soldiers, if not to govern settlers in their claims to vacant land? And if a survey, variant from. *471 the entry, made subsequent to the act of improvement or settlement, was to govern, of what use was the entry to the settler ? As, on the one hand, great mischiefs and confusions would ensue, from individuals taking upon themselves to decide whether a survey made previous to their improvement, had been legally made, of valid in law ; and making settlements thereon at their will and pleasure; so, on the other hand, like consequences would ensue, from military or other claimants, undertaking to determine the quo animo with which an improvement had been made ; and -when the improver’s intention to abandon was evidenced ; or when his improvement was forfeited, for want of residence; and thus to say, we will take advantage of the breach and forfeiture of the condition, without trial, or without mercy ; so as to preclude the commonwealth (to whom the right properly belongs) from excusing upon good reasons, or from graciously remitting the forfeiture.
We are decidedly of opinion, that it does not lie ⅛ the mouth of one claiming under Lipscombe’s survey, to say, the complainants have no claim. They are shewn to be bona Jide settlers and improvers, actually resident at the time of the survey made upon them, and ever since. The survey is altogether variant from the entry, and without plausibility for the mistake : for, independent of the error in the beginning assumed, and the error in the fork of the stream, up which the survey has been extended, a most palpable extension of the line, from the creek westward towards the settlers, has been made, of 700 poles instead of 420, the distance called for by the certificate of survey. The inspection of the plat, and a comparison of the report of survey in this cause with the entry and grant of Lipscombe, united with the actual settlement and residence of the complainants on the ground, when Lipscombe’s survey was made, furnish clear evidence of a fraudulent deviation from the entry, for the purpose of including the settlers. Whether Lipscombe, or his alienee, was privy to the fraud, is quite immaterial, as to the question of right here ; neither of them ought to be permitted to reap the fruits of this wrongful act, committed to the prejudice of the complainants.
We are, therefore, of opinion, that the complainants have the prior equitable claim to the lands in controversy.
*472 Wherefore, it is decreed and ordered, that the said decree of the circuit court be reversed, and it is hereby annulled and set aside ; and it is ordered; that the suit be remanded to the said circuit court, who are hereby .directed to enter a decree for the complainants, for their •respective quantities bf land, as specified in their certificates from the commissioners ¡ and that the defendant;
. Quarles, be directed to release all his claim to the said complainants, respectively; for their said several tracts of land, or so touch thereof as is included within the said survey made for Bernard Lipscombe ; the execution of said decree; however; to be stayed until the said complainants, respectively, or those claiming from or under them, shall sue out their patents; or procure effectual acquittances froto the commonwealth, of the instalments-of money due and to become due; with interest, for which the said commonwealth hath by law alien on said lands, under the said recited acts, arid the subsequent acts relating to the said rights : the said appellee, and all others claiming, or to claim, under, through; or by him, to be enjoined in the meantime from proceeding upon the judgment at law, as aforesaid obtained ; and the complainants in that court to have their costs.
And it is further decreed and ordered, that the appel-lee pay to the appellants their costs in this behalf expended. Which is ordered to be certified to the said circuit court*

(a) Ch. ⅜9* p. 79.

(b) A£ls of 1796-7,184.

 1 Ses. of 1798, ch. 46, p. 84, I Brad: 84.

 Maze vs. Hamilton, Wythe's Rep. 36.